IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHER DIVISION OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| SECRETS APPAREL & GIFTS, INC., | ) | |
| an Illinois Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO.  08 C 50122 |
| | ) | |
| CITY OF ROCKFORD, an Illinois | ) | |
| Municipality, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTIVE RELIEF

NOW COMES Plaintiff, SECRETS APPAREL & GIFTS, INC., ("Secrets") and files this

Memorandum in support of is Motion for Preliminary Injunctive Relief:

INTRODUCTION

Plaintiff has operated a retail store in Rockford since 2002.  Some of the items it offers

for sale are constitutionally protected expression such a books and videos a sexually explicit

nature. From 2002 to today's date, the City of Rockford  has never complained of any adverse

secondary effects resulting from that business.  In 2008, defendant enacted amendments to its

zoning ordinance that severely impact plaintiff's operations and gives Rockford unrestrained

discretion in discriminating against legitimate businesses, including Plaintiff.  That ordinance

requires certain businesses to obtain a certificate of zoning compliance before they may operate.

In order to obtain such a certificate of compliance, those businesses, including those

denominated "sexually oriented businesses," must first produce studies regarding Traffic Impact

(40-001-C.  1); Environmental Impact (40-001-C.  2); Architectural Integrity and Design (40-

001-C. 3) and Landscaping Screening and Buffering (40-001-C. 4).   Only after these extensive

and expensive studies have been conducted may one of these "designated" businesses operate. The problem with this scenario, however, is that there is no definition of "sexually oriented business" contained within the ordinance.

Despite the fact that Plaintiff has operated its business in the same place and the same manner for six years without objection from the City of Rockford, it has now been informed that it must comply with those requirements and obtain a certificate of compliance before it can continue to operate that same business.   Plaintiff's business is protected under the First Amendment.  Defendant's ordinance is vague and overbroad and infringes on plaintiff's rights. Plaintiff seeks injunctive relief against the City of Rockford because Rockford's ordinance and its enforcement of the ordinance violates the First Amendment of the Constitution and threatens to irreparably harm plaintiff's constitutional rights.

## ARGUMENT

## STANDARD FOR PRELIMINARY INJUNCTIVE RELIEF

To obtain a preliminary injunction, the movant must show (1) it is reasonably likely to succeed on the merits; (2) no adequate remedy at law exists; (3) it will suffer irreparable harm that outweighs any harm the nonmoving party will suffer if the injunction is granted; and (4) the injunction will not harm the public interest.  *Goodman v. Illinois Dept. Of Finance and Professional Regulations,* 430 F.3d 432 (7th Cir. 2005).

The Seventh Circuit employs a "sliding scale" in considering the balance of harms.  The "more likely it is that plaintiff will succeed on the merits, the less the balance of irreparable harms need weigh toward his side  in order to get the injunction." *Sofinet v. INS*, 188 F.3d 703, 707 (7th Cir. 1999).  See also, *Ping v. National Education Association,* 870 F.2d 1369, 1371 (7th Cir. 1989); *Roland Machinery Co. v. Dresser Industries*, Inc. 749 F.2d 380, 387 (7th Cir. 1984).

Although there is a minimum threshold for likelihood of success, it is a low one:  "it is enough if the plaintiff's chances are better than negligible…."  *Id*., at 387.

### A.  Plaintiff is Reasonably Likely to Succeed on the Merits

### (1)  Rockford's Zoning Ordinance is Vague, Overbroad, and Acts as a Prior Restraint

Because Rockford's ordinance violates the First Amendment, plaintiff is very likely to succeed on the merits.   A zoning ordinance or permitting scheme which gives officials or boards "substantial power to discriminate on the content or viewpoint of speech by suppressing disfavored speech or disliked speakers is unconstitutional." *City of Lakewood v Plain Dealer Publishing Co.,*  486 U.S. 750 (1988).   In First Amendment cases, courts have continuously found invalid ordinances requiring proposed uses which allow municipal authorities to require zoning permits based upon subjective criteria.  *Lady J. Lingerie,* 176 F.3d 1358, 1369-1370 (11th Cir. 1999).   The standards must be complete in and of themselves, and leave no factors to be assessed, judgments to be made, or discretion to be exercised by the appropriate licensing official.  *See Swearson v Meyers,* 455 F. Supp 88, 91 (D Kan., 1978).

Where First Amendment freedoms are at stake,  precision of drafting and clarity of purpose are essential.  *Erznoznik v. City of Jacksonville*, 422 U.S. 205 (1975); see also *Humanitarian Law Project v. Mukasey*, 509 F 3d 1122 (9th Cir. 2007).   "The purpose and effect of a zoning ordinance must be to reduce secondary effects and not to reduce speech." *City of Los Angeles v. Alameda Books, Inc*. 535 U.S. 425 (2002) (Kennedy, J. concurring in the judgment). Even though municipalities have broad latitude in adopting solutions to address secondary effects, they may not do so, without "providing evidence that supports a link between [the perceived cause] and [its] asserted secondary effects." *Alameda Books*, 122 S. Ct. at 1735.  A

law that punishes a 'substantial' amount of protected free speech, judged in relation to the statute's plainly legitimate sweep, suffices to invalidate all enforcement of that law, until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression.  *Conchatta Inc. v. Miller*, 458 F. 3d 258 (3rd Cir. 2006)   The four-member plurality in *City of Los Angeles v. Alameda Books,* 535 U.S.  425, 122 S.Ct. 1728 (2002) mandated that when analyzing laws supposedly directed at the "secondary effects" of "adult entertainment establishments," municipalities do not have *carte blanche* in enacting ordinances such as this. They must have evidence to support the restrictions enacted.

     Rockford's ordinance must be declared unconstitutional because there is no evidence that it conducted any study of sexually oriented businesses which would indicate that any of the businesses sought to be regulated cause any adverse effects. *See Alameda Books v. City of Los Angele*s, 535 U.S. 425 (2002); *RVS v. City of Rockford*, 361 F. 3d 402 (7th Cir. 2004).  To be valid, the ordinance would have to be rewritten to narrowly identify the businesses affected by the alleged adverse harm.  Studies are required to prove that the secondary effects exist for each of the businesses sought to be affected because the statute must be tailored to address only those secondary adverse effects. *RVS, LLC v. City of Rockford*, 361 F.3d 402 (7th Cir. 2004). Without such evidence, the restriction of First Amendment freedoms is significantly greater than is essential to the furtherance of the government interest*. See Conchatta Inc. v. Miller*, 458 F. 3d 258, 267-68 (C.A.3 (PA.) 2006); *Renton v. Playtime Theaters*, 475 U.S. 41, 106 S.Ct. 925 (1986);   s*ee also Buzzetti v. City of New York, 140 F.3d 134, 144 (2nd Cir. 1998)* ("[t]he ordinance must [be] narrowly tailored to affect only those businesses that are known to produce the unwanted secondary effects.  Failure to abide by this standard is fatal to the ordinance");

4

*Encore Videos, Inc. v. City of Antonio,* 330 F. 3d 288 (5th Cir. 2003);  *Erotique Shop Inc. v. City of Grand Prairie*, 2006 U.S. Dist. Lexis 85992 (N.D. TX. 2006);  *City of Los Angeles v. Alameda Books,* 535 U.S. 425, 438, 152 L. Ed. 2d 670, 122 S. Ct. 1728 (2002).

### (2)  The failure to properly define what constitutes a sexually oriented business renders the zoning ordinance vague.

The new Rockford zoning ordinance provides that "sexually-oriented businesses" are subject to a "Performance Review" standard.  The only reason set forth in the ordinance justifying the requirement that certain businesses be subject to this "Performance Review" standard is found in Section 40-001 of the ordinance, which states:

> Certain land uses that generate significant traffic volumes, that have significant "visual" impacts due to the use's outdoor operations, or those uses that have neighborhood impacts due to their size, scale, and hours of operation are subject to the performance standards of this Section....

The ordinance contains nothing else which defines or allows anyone to determine what land uses allegedly cause such "impacts", nor is the term "sexually oriented business" defined anywhere within the zoning ordinance.

The letter served upon Plaintiff claiming that it is in violation of the zoning ordinance provides no further elucidation.  It alleges that Plaintiff is operating a sexually oriented business, but contains no information as to what about the operation of Plaintiff's business makes it a "sexually oriented" operation.

A regulation is also void for vagueness when there is a lack of clear guidance for law enforcement officers.  The same ambiguities which are troubling to the average store-owner are likely to cause similar problems for those charged with enforcement of the ordinances.   The complete lack of any definitional language results in an ordinance which "[s]ets a net large enough to catch all possible offenders, and leave[s] it to the courts to step inside and say who

5

could be rightfully detained and who should be rightfully set at large."  City of Chicago

v.*Morales*, 119 S.Ct. 1849, 1861 (1999), quoting *United States v. Reese*, 92 U.S. 214, 221

(1876).  Because of the complete lack of a definition of a sexually oriented business,  the zoning

ordinance is facially void for vagueness.

      The proper inquiry is whether the regulation defines with sufficient specificity what is

prohibited. Where key words in a definition are themselves undefined, so that one does not get

an accurate sense of what is prohibited and what is permitted, the regulation will be found

unconstitutionally vague.  *Entertainment Concepts, Inc., III v. Maciejewski,* 631 F.2d 497, 501

(7th Cir. 1980); *J.L. Spoons, Inc. v. City of Brunswick*, 18 F.Supp.2d 775, 780-781 (N.D. Ohio,

1998).  Here, there are no definitions whatsoever, and Plaintiff and others operating similar retail

businesses are subject to the unbridled discretion of government officials as to what is a

"sexually oriented business."  The constitution does not tolerate such unbridled discretion.

      The requirement contained within the Rockford ordinance which requires a certificate of

zoning compliance is merely another name for a conditional use permit.  Such requirements have

been uniformly rejected unless they contain specific, objective criteria for their issuance.  For

example, in *3570 East Foothill Blvd., Inc. v. City of Pasadena*, 912 F.Supp. 1268 (C.D. Cal.

1996), the court considered a facial constitutional challenge to Pasadena's conditional use permit

and live entertainment permit ordinances and analyzed both zoning ordinances under the prior

restraint analysis because the ordinances required the permittee to obtain the government's

permission or approval before engaging in an act of speech.  *Id.* at 1273.  Finding that the

scheme placed "excessive discretion" in the hands of the government and therefore lacked

adequate procedural safeguards, the court invalidated the ordinance as an unconstitutional prior

restraint, and enjoined its enforcement.  *Id.*

6

In a similar analysis, the District Court of Minnesota found that the requirement of a conditional use permit which was required of all live theaters, cinemas, and other recreational facilities imposed a prior restraint. *MGA Susu, Inc. v. County of Benton*, 853 F.Supp. 1147, 1151 (D. Minn. 1994). That court enjoined enforcement of the zoning code, having found that the code lacked limits on the discretion of government officials. Like the ordinances considered in *MGA Susu* and in *Pasadena*, Rockford's zoning ordinance requires "permission" from the government in advance of operating a sexually oriented business; therefore, it is a prior restraint and must overcome the heavy presumption of unconstitutionality.

### (3) The zoning ordinance impermissibly gives Rockford Officials unbridled discretion

In 1965, the Supreme Court announced that laws governing advance permission to speak may not place "unbridled discretion" in the hands of the government. *Freedman v. Maryland*, 380 U.S. 51, 59 (1965). The Court has continually held that any prior restraint "without narrow, objective, and definite standards to guide the . . . authority" is unconstitutional. *Shuttlesworth v. Birmingham*, 394 U.S. 147, 150 (1969).

The requirement that the decision-maker not be vested with "unbridled discretion" means that whenever the government seeks to regulate protected expression, by requiring a license or zoning permit in advance of its dissemination, it must have discernible, objective standards which govern its decision set forth on the face of the ordinance, and it must adhere very narrowly to the explicit terms of that ordinance. *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750 (1988). Unless the regulation contains **explicit** standards which constrain the discretion of the authorities, the regulation is unconstitutional. W*olff v. City of Monticello*, 803 F.Supp. 1568, 1574 (D. Minn. 1992). In *3570 East Foothill Blvd.*, 912 F.Supp. at 1275, the court

noted that one of the "great dangers of a prior restraint scheme with excessive substantive discretion is that the licensor can censor speech for impermissibly content-based covert motivations, and then later rationalize the decision with seemingly permissible content-neutral decisions."

Most often, the issue of unbridled discretion arises in the context of whether the decision to grant or to deny a license is constrained by objective criteria. Here, the issue is manifest at an earlier stage in the process of regulation – in the determination of whether objective factors govern the decision to issue a certificate of zoning compliance. The complete lack of a definition governing whether or not a business is required to obtain various expensive studies to convince the city that it does not cause adverse secondary effects on the neighboring community turns the constitutional requirements on their head. It is the government's burden to demonstrate that such effects are caused by businesses of this sort. Businesses such as Plaintiff cannot be required to prove a negative.

Such broad discretion is impermissible. Vague language permits unbridled discretion, and indeed, many cases which discuss the two issues use the concepts of vagueness and unbridled discretion interchangeably. See, e.g., *Bledsoe v. City of Jacksonville Beach*, 20 F.Supp. 2d 1317, 1325 (M.D. Fla 1998), and *Elam v. Belva Bolling*, 53 F.Supp.2d 854, 862 (W.D.Va. 1999) ("the use of vague terms opens the Ordinance up to the possibility of wide-spread abuse and makes the peaceful enjoyment of the freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official.)

Courts have repeatedly nullified regulations that restrict First Amendment activities when the language of the regulation is general. For example, provisions governing the use of public parks in Milwaukee which required that the activity not "unreasonably interfere with general public

8

enjoyment or use and enjoyment by other permittees" was found not to be sufficiently "narrow, objective and definite" and therefore unconstitutional and void. *Milwaukee v. Milwaukee County Park Commission*, 477 F.Supp. 1210, 1217 (E.D. Wis. 1979).  In its determination that such provisions vested officials with unbridled discretion in deciding whether to grant a license for various activities within the park, the court observed that where statutory requirements may be used to deny the ability to speak to the whim of a governmental official, the First Amendment is violated.

> The courts have long held that:

> The standards must be more than mere criteria or guidelines; they must be complete in and of themselves, and leave no factors to be assessed, judgments to be made, or discretion to be exercised by the appropriate licensing official.  ***In other words, the decision… must be virtually a ministerial one.***
> *Swerson v. Meyers*, 455 F.Supp. 88, 91 (D. Kan. 1978)

These criteria have been echoed more recently by the United States Supreme Court: "If the permit scheme 'involves appraisal of facts, the exercise of judgment and the formation of opinion,' by the licensing authority, 'the danger of censorship and of abridgement of our precious First Amendment freedoms is too great' to be permitted."  *Forsyth County, Georgia v The Nationalist Movement,* 505 US 123, 131 112 S Ct 2395,, 120 L Ed 2d 101 (1992).  In *Forsyth*, the Supreme Court invalidated a regulation where the licensing administrator was not required to rely solely on "objective factors."   *Id*., at 133.  Without objectively measurable criteria by which it is determined whether a store is a sexually oriented business, the decision whether it falls within the group of uses which must demonstrate that they do no harm to their surroundings allows totally unfettered discretion.  Such uncontrolled power is constitutionally forbidden.

**(2)  Rockford Must be Equitably Estopped from Enforcing the Ordinance against Plaintiff**

"Equitable estoppel is a doctrine developed in equity to prevent a party from asserting rights where the assertion of those rights would work a fraud or injustice.  In Illinois, the doctrine of equitable estoppel is applicable to municipal corporations."

> "Where there has been a substantial change of position, expenditures or incurrence of obligations made in good faith by an innocent party under a building permit or in reliance upon the probability of its issuance, such party has a vested property right and he may complete the construction and use the premises for the purposes originally authorized, irrespective of subsequent zoning or a change in zoning classification."  *Furniture, LLC v. City of Chicago*, 353 Ill. App. 3d 433, 438, 818 N.E.2d 839 (1st Dist. 2004).

"Expenses incurred at a time when the current zoning permits the intended use and when the property owner has no knowledge that an amendment to the ordinance is being considered are incurred in good-faith reliance on the issuance of a zoning certificate and a building permit and, if substantial, create a vested right."  353 Ill. App. 3d at 437-38; s*ee also Pioneer Trust & Savings Bank v. County of Cook*, 71 Ill. 2d 510, 377 N.E.2d 21 (1978).

A party seeking to invoke the doctrine of equitable estoppel against a municipality must establish the following:  (1) an affirmative act on the part of the municipality; (2) that the affirmative act induced the complained-of action; and (3) that it substantially changed its position as a result of its justifiable reliance.  The affirmative acts which induce reliance must be the acts of the municipality, such as legislation, and not merely the unauthorized acts of a ministerial officer.  353 Ill. App. 3d at 439.

The municipality making the amendment must bear the burden of showing a public need for the amendment.  While city councils have broad discretion in enacting legislation, their power has

10

definite limits, particularly when their actions affect the citizenry's ability to use its real property. The Illinois Supreme Court as well as the federal courts, has made it clear that the power to amend zoning ordinances must be exercised only when the public good demands or requires that an amendment be made.  One who acquires land has a right to rely upon the classification which existed at the time the purchase was made, and upon the rule of law that the classification will not be changed unless the change is required for the public good.  *Wesemann v. Village of LaGrange Park,* 407 Ill. 81, 89, 94 N.E.2d 904 (1950); *Bolger v. Village of Mount Prospect,* 10 Ill. 2d 596, 603, 141 N.E.2d 22 (1957); *Cosmopolitan National Bank of Chicago v. City of Chicago,* 27 Ill. 2d 578, 584, 190 N.E.2d 352, 355 (1963).

In this case, Rockford affirmatively acted by allowing plaintiff to operate its business from 2002-2008.  Because the new Rockford ordinance is contrary to its previous provisions.,  defendant should be estopped from applying its ordinance to plaintiff.  Rockford's previous actions  that allowed  plaintiff to operate its  business for six years, induced plaintiff to continue to operate its business.  Plaintiff purchased the business in 2002 based upon the position that Rockford would permit it to operate.  Plaintiff has continued to operate upon the same premises.  It did not sell the business or convert it into a different type of business.  As a ressult, plaintiff has substantially relied on the position that Rockford would permit it to continue in its operations.  Therefore, defendant is estopped from enforcing the amended ordinance against plaintiff.

Here, no evidence of any kind was presented to support the necessity of an amendment.  The power to zone or rezone cannot be exercised to satisfy the individual desires of a few.  *Trust Co. of Chicago v. City of Chicago,* 408 Ill. 91, 96 N.E.2d 499 (1951); *Kennedy v. City of Evanston,* 348 Ill. 426, 181 N.E. 312 (19 32); *Phipps v. City of Chicago,* 339 Ill. 315, 171 N.E. 289 (1930 ).

11

**B.    NO ADEQUATE REMEDY AT LAW EXISTS**

When First Amendment rights are compromised by an ordinance, monetary damages cannot fully compensate the plaintiff's injury.  *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Illusions Too Reality*, 2003 U.S. Dist. Lexis 1530 at *22 (N.D. Ill. 2003).   In First Amendment cases, "the quantification of injury is difficult and damages are therefore not an adequate remedy." *Wisconsin Vendors Inc. v. Lake County*, 152 F. Supp. 2d 1087, 1093 (N.D. Ill. 2001).  Accordingly, there is no other adequate remedy at law for interference with First Amendment rights.

**C.    PLAINTIFF WILL BE IRREPARABLY INJURED**

The loss of a First Amendment right, even for a minimal period of time, is deemed an irreparable injury warranting injunctive relief. "[T]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Illusions Too Reality, LLC v. City of Harvey*, supra;  *Wisconsin Vendors Inc., v. County of Lake, supra* (stating that "in cases where the threatened harm is the deprivation of plaintiff's First Amendment right  to free expression, the general rule is that irreparable harm will be presumed"); *22ND Ave. Station Inc. v. City of Minneapolis*, 429 F. Supp. 2d 1144, (D. Minn. 2006).

Without a preliminary injunction, plaintiff will not be able to operate its business.  The harm to a small business caused by enforcing a possibly unconstitutional ordinance far outweighs any inconvenience to a municipality seeking to enforce such an ordinance during the time it takes for the Court to determine the ordinance's validity.  *Joelner v. Village of Washington Park, IL.,* 378 F.3d 613 (7th Cir. 2004).

12

### D.  THE INJUNCTION SOUGHT WILL NOT HARM THE PUBLIC INTEREST

In balancing the interests of the parties, it is clear that the injunction should be issued to protect plaintiff's First Amendment rights. Plaintiff has a substantial interest in exercising its First Amendment rights.  Plaintiff purchased the business in 2002 and operated it,  without Rockford's interference and without creating any secondary adverse effects, for six years.  Since there are no harms to prevent, the injunction will not affect any other parties adversely. On the other hand, the public will be harmed if the ordinance forces plaintiff to close its operations.  Public interest is served by preventing the violation of a party's constitutional rights.  Therefore, the balance of the harms favor plaintiff. *Illusions Too Reality*, supra at *23.

### CONCLUSION

Zoning restrictions are valid only when they bear a reasonable relation to the public health, comfort, morals, safety and general welfare and do not contravene constitutional rights.  This Court has a duty to declare the statute  invalid when they infringe on basic constitutional liberties.

The  preliminary injunction sought by Plaintiff should be issued by this court.  Plaintiff is likely to succeed on the merits of the case because Rockford has enacted an ordinance that is unconstitutionally vague, overbroad and has no factual underpinning.  Plaintiff has  no adequate remedy at law.  Plaintiff will suffers irreparable harm unless  an injunction issues.  The public and defendant are not harmed by the issuance of an injunction.   Until this court finally determines the merits of this case, the status quo must be maintained by the issuance of an injunction prohibiting Rockford from taking further actions which would interfere with plaintiff's ability to continue to operate its business as it has for the past six years.

S/ Wayne B. Giampietro
Attorney for Plaintiff

Wayne B. Giampietro
Michael G. Aretos
Shannon B. Rigby
Stitt, Klein, Daday, Aretos & Giampietro, LLC
2550 W. Golf Rd., Suite 250
Rolling Meadows, IL 60008
847-590-8700; Fax: 847-590-9825